IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| John L. Penza, | Case No. 8:10-cv-2361-JFA-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| D.H.O. Sharon Patterson; South Carolina Department of Corrections, | |
| Defendants. | |

This matter is before the Court on a motion for summary judgment filed by Defendants Sharon Patterson ("Patterson") and the South Carolina Department of Corrections ("SCDC"). [Doc. 22.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff filed this action on June 16, 2010 in the South Carolina Court of Common Pleas for Richland County, generally alleging claims of gross negligence, deliberate indifference, and denial of due process under state and federal law because he was denied procedural due process and suffered punishment. [Doc. 1-1 at 4.] Plaintiff also alleges violations of his Fifth, Eighth, and Fourteenth Amendment rights, as well as violations of sections 3, 14, and 15 of Article 1 of the South Carolina Constitution.[1] [Doc. 1-1 at 5–6.]

---

[1] In his state court filing, Plaintiff filed several different documents on the same date, which were captioned Motion To Proceed Informa Pauperis, Summons, Complaint, Motion to Amend Complaint, Claims for Relief Based on Complaint, and Facts. [Doc. 1-1 at 2–11.] Upon reviewing these documents, the Court

On September 9, 2010, Defendants removed Plaintiff's action to this Court based on the Court's federal question jurisdiction under 28 U.S.C. § 1331. [Doc. 1.] On March 8, 2011, Defendants filed a motion for summary judgment. [Doc. 22.] On March 9, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised on the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 23.] On April 14, 2011, Plaintiff filed a response in opposition to Defendants' motion for summary judgment. [Doc. 26.] Accordingly, Defendants' motion is now ripe for review.

## BACKGROUND

Plaintiff alleges he arrived at Broad River Correctional Institution ("BRCI")[2] on June 4, 2009, and on June 5, 2009, while out on a transportation run, an "object"—later identified as a cellular phone—was found in the lighting fixture of the holding cell Plaintiff had occupied. [Doc. 1-1 at 9.] As a result, Plaintiff alleges he was placed in an air conditioned cell, stripped naked, and forced to sleep on a concrete slab for seven days as a form of punishment. [*Id.*] Six weeks later, on July 14, 2009, Plaintiff alleges he received a pre-hearing detention form, which, Plaintiff claims, "an inmate must receive within (24) twenty[-]four hours of being placed in a special manag[e]ment unit for any reason."[3] [*Id.* (emphasis omitted).] Plaintiff claims he was formally charged for being in possession of

---

construes Docket Entry 1-1 at pages 4 through 11 to form the Complaint in this case.

[2] Plaintiff is currently housed at McCormick Correctional Institution. [Doc. 10.]

[3] Defendant Patterson avers the incident was placed under investigation by the Division of Investigation ("Division"), and a disciplinary hearing could not be held until the Division gave notice that a hearing could be held. [Doc. 22-2 ¶ 8.] On or about December 11, 2009, the Division concluded the disciplinary charge would not affect an on-going extortion investigation and a disciplinary hearing could be held regarding this charge. [*Id.* ¶ 9.]

2

a cellular phone on July 21, 2009 and notified that he would receive a disciplinary hearing within twenty-four hours of his receipt of the notice. [*Id.*] According to Plaintiff, a hearing must be held within a specific time frame "to be legal." [*Id.* at 10.] To hold a hearing outside the specific time frame, Plaintiff alleges the designated hearing officer ("DHO") must ask for and obtain an extension of time. [*Id.*]

On July 27, 2009, Plaintiff alleges he was taken before DHO Moore[4] for a hearing on the charge of possessing a cellular phone, and the hearing officer chose to continue the case but did not request and receive permission to extend the time period for the hearing. [*Id.*] On December 15, 2009, after filing grievances that allegedly vanished, and after Plaintiff's mother wrote the warden regarding Plaintiff's lack of due process, Plaintiff alleges he was re-served with formal charges and a hearing notice. [*Id.*]

On December 21, 2009, Plaintiff alleges he appeared for a hearing before Defendant Patterson, who requested an extension of time to hear the case in accordance with SCDC Policy OP-22-14. [*Id.* at 10–11.] Subsequently, on January 14, 2010, a hearing was held before Patterson on Plaintiff's cellular phone possession charges. [*Id.* at 11.] Plaintiff alleges Patterson violated SCDC policy when she became "hostile, arrogant, and even proce[e]ded to stop the hearing recorder numerous times," allegedly in violation of section 12.1 of SCDC Policy OP-22-14. [*Id.* (emphasis omitted).] Plaintiff was found guilty of cellular phone possession and was given 400 days disciplinary detention and 760 days loss of all privileges. [*Id.*; Doc. 22-3 at 1.] Plaintiff alleges he filed an appeal by way of a grievance that, like his other grievances, vanished. [Doc. 1-1 at 11.]

---

[4] DHO Moore is not a party to this action.

3

Plaintiff brings suit against Patterson and SCDC in their "personal and official capacities." [*Id.* at 6.] Plaintiff seeks punitive damages in the amount of $25,000 against Patterson; $25,000 against SCDC; and $150 against Defendants collectively and separately for each day Plaintiff was illegally housed in SMU, as well as reimbursement for all postal and writing supply charges applied to his account since June 5, 2009. [*Id.* at 6–7.] Plaintiff also seeks damages in the amount of $50,000 jointly and separately against Defendants for pain and suffering—including physical, mental, and emotional suffering—and cruel and unusual treatment and punishment. [*Id.* at 7.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by

> governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Eleventh Amendment Immunity**

Defendants argue Plaintiff's claims must be dismissed as to SCDC and Patterson in her official capacity because, pursuant to the Eleventh Amendment, SCDC and Patterson in her official capacity are alter egos of the State of South Carolina and are not "persons" amenable to suit under 42 U.S.C. § 1983. [Doc. 22-1 at 2]. The Court agrees.

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state

8

officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against SCDC and Patterson in her official capacity, those claims must be dismissed because SCDC and Patterson in her official capacity are entitled to immunity pursuant to the Eleventh Amendment.

**Exhaustion of Administrative Remedies with Respect to Remaining Claims**

Defendants argue Plaintiff's Complaint should be dismissed for failure to exhaust administrative remedies. [Doc. 22-1 at 8–9.] Because the Court has determined that, under the Eleventh Amendment, SCDC and Patterson in official capacity are immune from suit, the Court now considers only whether Plaintiff has exhausted his administrative remedies with respect to his claims against Patterson in her individual capacity.[5] For the

---

[5] Liberally construing Plaintiff's allegations, the Court finds Plaintiff contends Patterson denied Plaintiff due process in his disciplinary hearing. Plaintiff alleges that during the January 14, 2010 hearing on his cellular phone possession charge, Patterson "became hostile, arrogant and even proceeded to stop the hearing - recorder numerous times, which also violates S.C.D.C. Policy OP-22.14 in section 12.1." [Doc. 1-1 at 11 (emphasis omitted).] Plaintiff claims that as a result, he "was found guilty at this 'illegally held hearing' and given 400 days disciplinary detention time and 760 days overall loss of all privil[e]ges." [*Id.* (emphasis omitted).]

Additionally, Plaintiff alleges numerous other state and federal law claims, including gross negligence, deliberate indifference, cruel and ususal punishment, and violations of the Equal Protection Clause and Double Jeopardy Clause, against unidentified individuals at SCDC. By failing to name specific staff members as defendants, Plaintiff has failed to state a claim against a "person" as required in § 1983 actions. *See Pearson v. STBG Parole & Prob. & Pardon Serv.*, No. 4:08-03137, 2009 WL 607370, at *3 (D.S.C. Mar. 6, 2009) (citing *Martin v. UConn Health Care*, No. 3:99CV2158 (DJS), 2000 WL 303262, at *1 (D. Conn. Feb. 9, 2000); *Ferguson v. Morgan*, No. 90 Civ. 6318, 1991 WL 115759 (S.D.N.Y. June 20, 1991)) ("[U]se of the

reasons explained below, Plaintiff has failed to exhaust his administrative remedies with respect to these claims.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

---

term 'staff' or the equivalent as a name for alleged defendants, without the naming of specific staff members, is inadequate to state a claim against a 'person' as required in § 1983 actions."); 42 U.S.C. § 1983 (providing a cause of action against "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" (emphasis added)). Accordingly, the Court recommends these claims be dismissed.

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the SCDC grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). Hence, within this District, an inmate's claim is barred unless he completes Step 2 of the SCDC grievance procedure with respect to that claim.

Here, it is apparent Plaintiff did not exhaust his administrative remedies with respect to his claims against Patterson. Plaintiff contends he attempted to initiate grievances as to the claims he asserts in this case,[6] alleging he mailed each of his Step 1 grievances to

---

[6] On July 21, 2009, Plaintiff completed a Step 1 grievance form regarding an alleged rules violation stemming from his charge of possession of a cellular phone. [Doc. 26-4 at 1.] Plaintiff complained that he was just charged with the infraction on July 21, 2009, but the alleged infraction occurred on June 5, 2009, more than six weeks prior to the charge. [*Id.*] Plaintiff claimed that charging him with the infraction more than six weeks after it occurred violated SCDC rules and his right to due process. [*Id.*] On July 27, 2009, Plaintiff

Ms. Montgomery, the grievance coordinator, but she never received any of these grievances.[7] [Doc. 26-4 at 6, 9–10.] However, none of the grievances Plaintiff submitted to the Court demonstrate that Plaintiff grieved his claim of deprivation of due process by Patterson through the administrative grievance process. [*See* Doc. 26-4 (failing to allege any wrongdoing by Patterson).] Although Plaintiff did not submit a copy of his January 14, 2010 grievance, based on other evidence submitted by Plaintiff, the Court concludes Plaintiff has failed to demonstrate that this grievance exhausted his claim against Patterson. Plaintiff has represented that his January 14, 2010 grievance was an appeal of the January 14, 2010 hearing decision imposing punishment for Plaintiff's possession of a cellular phone. [Doc. 26-4 at 7–10.] Further, based on Plaintiff's February 3, 2010 letter to Warden Stevenson, the Court determines Plaintiff's appeal was likely based on the alleged miscalculation of the date on which his punishment ends. [*See id.* at 10–11.] Neither of these documents mentions Patterson. Therefore, Plaintiff has failed to demonstrate he exhausted the prison grievance procedure before filing this § 1983 action,

---

completed an "Affidavit/Proof of Service," signed by Plaintiff and Eugene Keitt, Jr., the BRCI postmaster, to certify he placed the July 21 grievance in the mail. [*Id.* at 2.]

On December 4, 2009, Plaintiff completed a Step 1 grievance form, grieving his detention in the SMU for six months without due process of any kind and in violation of policy and agency rules. [*Id.* at 3.] Plaintiff stated he was being subjected to cruel and unusual punishment because he was in SMU without receiving punishment from a hearing board or other disciplinary source. [*Id.*] Plaintiff stated he could not grieve this issue at an earlier date because he did not have any writing supplies to send in a grievance within the grievance period. [*Id.* at 3–4.] On December 8, 2009, Plaintiff completed an "Affidavit/Proof of Service," signed by Plaintiff and Eugene Keitt, Jr., the BRCI postmaster, to certify he placed the December 4 grievance in the mail. [*Id.* at 5.]

On January 14, 2010, Plaintiff allegedly completed a Step 1 grievance form, appealing the outcome of the disciplinary hearing held the same day. [*See id.* at 7–9 (January 14, 2010 grievance not submitted to the Court but referenced in Plaintiff's affidavit averring he mailed the grievance).]

[7] Defendants submitted the affidavit of James Simmons, III, an Inmate Grievance Administrator with SCDC, who averred Plaintiff has not submitted a grievance since August 26, 2008 [Doc. 22-4 ¶ 10], which was well before any of the events giving rise to Plaintiff's Complaint. Plaintiff alleges SCDC personnel interfered with his attempts to exhaust his administrative remedies [Doc. 26 at 15–17], but as discussed *infra*, Plaintiff has failed to exhaust his administrative remedies notwithstanding any alleged interference by Defendants.

12

*see Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue), and this action should be dismissed for failure to exhaust administrative remedies with respect to Plaintiff's claims against Patterson.[8]

---

[8] Even if Plaintiff had exhausted his administrative remedies with respect to his claims against Patterson, Plaintiff has failed to establish Patterson violated his constitutional rights. Liberally construing Plaintiff's allegations, the Court finds Plaintiff contends Patterson denied Plaintiff due process in his disciplinary hearing by failing to follow SCDC policy with respect to disciplinary hearings. First, Plaintiff's claim that Patterson failed to follow SCDC policies and procedures, even if true, fails to set forth a claim of a constitutional magnitude. *See Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (holding that violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); *see also Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("[T]o hold that a state violates the Due Process Clause every time it violates a state-created rule regulating the deprivation of a property interest would contravene the well recognized need for flexibility in the application of due process doctrine."); *Scott v. Hamidullah*, No. 05-3027, 2007 WL 904803, at *5 n.6 (D.S.C. Mar. 21, 2007) ("To the extent Plaintiff alleges that Defendants did not follow their own policies, his claim fails as a failure of prison officials to follow their own policies or procedures, standing alone, do not amount to constitutional violations."); *Johnson v. S.C. Dep't of Corrs.*, No. 06-2062, 2007 WL 904826, at *12 (D.S.C. Mar. 21, 2007) ("Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation."); *cf. Paul v. Davis*, 424 U.S. 693, 701 (1976) (stating that not every claim that may set forth a cause of action under a state tort law is sufficient to set forth a claim of a violation of a constitutional right).

Second, in *Wolff v. McDonnell*, the Supreme Court set out what due process requires with respect to prison disciplinary hearings:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

418 U.S. 539, 563–76 (1974). Here, Plaintiff does not allege a failure to receive twenty-four hours notice of his disciplinary hearing; failure to provide a written statement of his charges; an inability to call witnesses or to obtain assistance; he is illiterate or the issue determined at the disciplinary hearing was particularly complex; or a lack of impartial fact finders. To the contrary, Plaintiff was provided notice on July 21, 2009 of

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 53] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 26, 2011
Greenville, South Carolina

---

the July 27, 2009 hearing, which was subsequently continued, and was provided notice on December 15, 2009 of the December 21, 2009 hearing, which was continued to January 14, 2010. [Doc. 1-1 at 9–11.] Plaintiff was obviously aware he was being charged with "an 898," possession of a cellular phone. [*Id.*] Further, Plaintiff was able to request witnesses to appear at his hearing on the charge. [Doc. 26-5 at 2.] Moreover, Plaintiff's prosecution of this action suggests he is not illiterate and was capable of collecting and presenting evidence at his disciplinary hearing without aid. Finally, Plaintiff neither alleged nor provided any evidence of a lack of impartiality on the part of the fact finders. Therefore, Plaintiff has failed to demonstrate Patterson violated Plaintiff's constitutional rights, and Patterson is entitled to summary judgment on the merits of Plaintiff's claims against her.